WITTKE, Sheriff of Racine County, Plaintiff in error, v. STATE EX REL. SMITH, Defendant in error. [Case No. 76–610–CR.]

STATE, Plaintiff in error, v. SMITH, Defendant in error. [Case No. 76–611–CR.]

*Nos. 76–610–CR, 76–611–CR. Argued October 5, 1977.—Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 515.)

For the plaintiffs in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant in error the cause was argued by *Melvin F. Greenberg,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

CONNOR T. HANSEN, J.   This matter is before the court on two writs of error issued at the instance of Leland Wittke, Sheriff of Racine County, plaintiff in error, and the State of Wisconsin, plaintiff in error (hereinafter plaintiffs).

One writ of error is to review an order of the county court which dismissed a criminal complaint, following a preliminary examination, for failure to show probable cause that a felony had been committed by John Smith, also known as John A. Smith, defendant in error (hereinafter defendant).

The second writ of error is to review an order of the circuit court which made absolute a writ of habeas corpus and discharged the defendant following the issuance of a second criminal complaint against the defendant.

The defendant has filed a motion with this court to dismiss the review of the order of the county court dismissing the criminal complaint against the defendant following the preliminary examination. The defendant alleges the plaintiffs have waived any right to bring such a review because of the issuance of the second criminal complaint. We reserved decision on this motion pending consideration on the review of the writs of error on their merits and now deny the motion to dismiss.

Briefly stated, the facts that produced this review are that on November 27, 1976, Racine police officers responded to a "family problem" call involving the defendant. The defendant had been drinking, had quarreled with his wife, and had locked her out of their apartment. When the officers attempted to persuade him to allow his wife into the apartment or to give her their six-week old baby, the defendant lunged at them through the partially open door with a ceremonial sword, approximately three feet long. After lunging several more times and threatening to "run [the officers] through" and "do [them] in," the defendant emerged from the apartment and struck one of the officers several times with the sword, causing bruises and minor lacerations. The incident is described more fully in our discussion of the issues.

Four days later, the defendant was charged with attempted murder. At a preliminary examination before the county judge, two of the officers gave their accounts of the incident. The defendant's wife, who did not witness the incident itself, testified to surrounding events.

At the conclusion of testimony the county judge ruled that the state had not established probable cause to believe that a felony had been committed. Accordingly, on December 28, 1976, he entered an order dismissing the complaint and discharging the defendant. A writ of error issued to review this order.

On December 10, 1976, the day following the preliminary hearing, a second complaint was issued against the defendant. This complaint, based on the same incident, charged the defendant with battery to a peace officer, sec. 940.205, Stats., and endangering safety by conduct regardless of life, sec. 941.30.

The defendant petitioned for a writ of habeas corpus and a hearing was held before the circuit judge on January 25, 1977. At this hearing, the state stipulated that it had no further testimony to offer other than the cumulative testimony of the third officer at the scene.

Relying on *State v. Antes*, 74 Wis.2d 317, 246 N.W.2d 671 (1976), the circuit judge ruled that a second complaint may be issued only when supported by new or unused evidence, and that testimony which is merely cumulative or corroborative is not "new evidence" when the credibility of the original evidence was not in doubt. The circuit judge then entered an order sustaining and making absolute the writ of habeas corpus and discharging the defendant. A writ of error also issued to review this order.

We believe these reviews present the following issues:

1. After dismissal of a criminal complaint for lack of probable cause, may a new complaint be issued in the absence of additional evidence?

2. Does a district attorney, by filing a second criminal complaint, waive the right to appeal the dismissal of a first complaint for lack of probable cause?

3. If the right to appeal has not been waived, was the evidence adduced by the state sufficient to establish probable cause to believe that the defendant had committed a felony?

## ISSUANCE OF SECOND CRIMINAL COMPLAINT.

The first issue presented is whether this court's decision in *State v. Antes, supra,* bars the issuance of a second criminal complaint in the absence of additional evidence.[1] Prior to *Antes,* the controlling cases were *Tell v. Wolke,* 21 Wis.2d 613, 124 N.W.2d 655 (1963), and *State ex rel. Beck v. Duffy,* 38 Wis.2d 159, 156 N.W.2d 368 (1968). These decisions allowed the state to reissue the complaint after a dismissal at a preliminary examination.

*Tell* and *Beck* construed sec. 955.20, Stats. (now sec. 970.04),[2] which permitted reissuance only upon the dis-

---

[1] The plaintiffs concede that on the facts of this case the cumulative testimony of the third officer does not constitute "additional" evidence. It is not necessary, therefore, to reach the question whether cumulative evidence may under some circumstances constitute additional evidence.

[2] Former sec. 955.20, Stats., provided:

"*Second examination.* If a preliminary examination has been had and the defendant has been discharged for want of evidence, and the district attorney afterwards discovers evidence sufficient, in his judgment, to convict the defendant, he may cause another complaint to be made, and thereupon further proceedings shall be had."

Sec. 970.04, now provides:

"*Second examination.* If a preliminary examination has been had and the defendant has been discharged, the district attorney may file another complaint if he has or discovers additional evidence."

covery of additional evidence, to be directory only and not to bar the filing of a second complaint. In *Beck, supra,* the court was unpersuaded by the argument that the state would adduce the same evidence at a second examination as it had at the first. Even if this were true, the court concluded, the state could reissue the complaint because:

" '. . . The state has no appeal from errors of law committed by a magistrate upon preliminary examination and the discharge on a preliminary would operate as an unchallengeable acquittal. . . *The only way an error of law committed on the preliminary examination prejudicial to the state may be challenged or corrected is by a preliminary examination on a second complaint.* . . .'

". . . The state is entitled to its day in the supreme court on any errors of law that may have been committed by the trial court. Permitting a second complaint, as in the instant case, is the only way it can have that day. . . ." *State ex rel. Beck v. Duffy, supra,* 166, *quoting Tell v. Wolke, supra,* 619, 620.

In *State v. Antes, supra,* this court reconsidered the appealability of orders entered in connection with preliminary examinations. *Antes* involved an order which dismissed an information charging armed robbery, but granted leave to the state to amend the information to charge robbery. The court held that this order was a final order, appealable by the state, because it precluded trial on the armed robbery charge. The court further stated that where the state has no additional evidence or believes an error of law has been committed, an order discharging the defendant at a preliminary hearing may be appealed. *State v. Antes, supra,* at 323. The contrary language in *Tell* and *Beck* was withdrawn as unnecessary to support those decisions.

The plaintiffs argue that *Antes* modifies *Tell* and *Beck* only insofar as they precluded appeal, and that *Antes*

leaves open the state's option to issue a second complaint. They point out that *Antes* specifically endorsed *Tell* and *Beck* as "judicially sound decisions" which "correctly construed sec. 955.20, Stats. (970.04)" and which "were based on sound policy." *State v. Antes, supra,* 323.

A close reading of *Antes,* however, reflects that the court's approval was not directed toward reissuance of a complaint on the same evidence. Rather, the judicially sound core of *Tell* and *Beck,* approved and preserved by *Antes,* was the holding that a second complaint may be issued when the state has evidence which is new or unused. Thus, the court described *Tell* as:

". . . primarily a holding that when new or unused evidence would support a finding of probable cause a second complaint could be issued. . . ." *States v. Antes, supra,* 322.

The court went on to say that:

"If the district attorney has evidence which will show probable cause that a defendant committed a crime and this evidence was not used at the first preliminary, he ought to be able to reissue. . .

"*Tell* and *Beck, supra,* stand for the proposition that after the discharge of a defendant at a preliminary examination the state may reissue a complaint if it has or discovers additional evidence. *See* sec. 970.04, Stats. But if the state has no additional evidence or believes an error of law was committed it should be able to appeal." *State v. Antes, supra,* 323.

Defendant contends that the only recourse this language affords the state, when it has no additional evidence, is that of appeal. The principal rationale for allowing a second complaint on the same evidence in *Beck, supra,* was the absence of any other remedy for errors prejudicial to the state. By allowing appeal in such cases, *Antes, supra,* removed this justification. Most important, *Antes'* holding of appealability arises

from a determination that, where an alleged error of law has been committed or there is no additional evidence, an order dismissing the complaint is a final order. By definition, a final order " ' ". . . closes the matter and precludes further hearing and investigation. . . ." ' " An order is not final if it does not " '. . . completely dispose of the subject matter and settle the rights of the parties. . . .' " *Antes, supra,* 321, *quoting Herman Andrae Electrical Co. v. Packard Plaza, Inc.,* 16 Wis.2d 44, 48, 113 N.W.2d 567 (1962).

This court's holding of finality is incompatible with the state's theory that a second complaint may be issued on the same evidence. If, as the state asserts, a defendant could be recharged, then dismissal of the first complaint would not dispose of the subject matter, settle the rights of the parties or preclude further hearing and investigation. Yet *Antes, supra,* holds that an order dismissing an armed robbery charge ". . . does preclude a trial on the armed robbery charge. . . ," *Antes, supra,* 322, and is therefore a final order. If the issuance of a second complaint, based upon the same evidence, were possible, the order dismissing the first complaint for lack of probable cause could not be characterized as a final order.[3]

---

[3] *State v. Bagnall,* 61 Wis.2d 297, 302, 212 N.W.2d 122 (1973), does not permit a contrary conclusion. There this court held that an order may be final even though it does not dispose of the entire subject matter of the litigation. *Bagnall* allows for appeal when an order terminates a proceeding "separate enough" from the remainder of the litigation to warrant holding the order a final order. *State v. Bagnall, supra,* 302. This holding permits appeal from an order which precludes further hearing on a particular question, even though the litigation in its entirety is not terminated. The principle has no application here because dismissal of a first complaint would not preclude further hearing on any substantive issue if an identical second complaint could be filed. Nor would the two prosecutions be sufficiently separate to make the order dismissing the first complaint a final order.

The law does not favor repeated litigation of the same issue. Public policy and effective judicial administration require that controversies once decided on their merits remain in repose and that inconsistent judicial decisions not be made on the same set of facts. Duplicative litigation involves needless expense and disorder, and creates hardship on the individual who is twice vexed for the same cause. *See:* 50 C.J.S., *Judgments,* sec. 592, p. 11; 46 Am. Jur.2d, *Judgments,* sec. 395, pp. 559–563; and *Kiel v. Scott & Williams,* 186 Wis. 415, 420, 202 N.W. 672 (1925). The public has an interest in the finality of judicial decisions. Where the existence of probable cause has been fully litigated, where the proceedings have culminated in a final order of dismissal, and where there is no additional evidence to support a different result, unlimited relitigation should not be permitted.

The ALI Model Code of Pre-Arraignment Procedure reflects similar reasoning. The Code would allow reinstatement of a dismissed complaint only on the basis of new evidence and only within sixty days after dismissal.[4] The drafters of this proposal explained their rationale:

---

[4] Sec. 330.7 of the Model Code, *supra,* pp. 227, 228, provides in part:

"(2) *Motion to Reinstate the Complaint.* Within sixty days after entry of an order dismissing the complaint for lack of reasonable cause, the prosecutor may make a motion to reinstate the complaint and reopen the preliminary hearing. The motion shall be based upon the affidavits or other recorded sworn testimony of witnesses establishing new evidence which together with evidence previously introduced at the preliminary hearing establishes reasonable cause as defined in Subsection 330.5(3). . . .

". . .

"(5) *Conduct of the Hearing.* . . Unless the prosecution presents new evidence which, together with the evidence introduced at the first hearing, establishes reasonable cause to hold the de-

"While the strict limitations of double jeopardy are inappropriate to the screening stage of the process, some degree of finality should be accorded to a determination that comes with the formality of a judicial determination upon an adversary hearing. The balance struck by this section is to allow the prosecution sixty days during which it may develop additional evidence to support the charge and to seek to reinstate the complaint and reopen the hearing on the basis of such additional evidence. Otherwise, the dismissal of the complaint is final and bars further prosecution of the offense. . . ." ALI, Model Code of Pre-Arraignment Procedure, sec. 330.7, *Note*, p. 228 (1975).

We believe both parties overstate their respective positions. The defendant, in effect, argues that the state cannot appeal from a dismissal after a preliminary examination and at the same time argues the state should not be permitted to reinstate the criminal prosecution. On the other hand, the state would characterize the order of dismissal as final, and thus an appealable order. At the same time, it would accord it no finality and thus allow the state, at its option, to commence a new prosecution or appeal from the dismissal, and perhaps to pursue both remedies simultaneously.

Considerations of fairness and public policy demand that the state be afforded some means of relief from an erroneous dismissal of a criminal complaint. However, there is no reason to believe that an appeal is not an adequate remedy. These same considerations of fairness and public policy afforded to the defendant demand that the state should not be permitted to forego an appeal and instead subject the defendant to successive preliminary examinations when it can produce no new or unused evidence.

fendant for trial, the court shall dismiss the complaint and discharge the defendant."

By recognizing the right of the state to appeal when it "has no additional evidence or believes an error of law was committed," *Antes, supra,* 323, affords the state an adequate remedy. Under these circumstances, then, there is no justification for the issuance of a second criminal complaint.

Plaintiffs insist that recharging serves a salutary purpose by providing an opportunity for correction of erroneous rulings without taxing the resources of this court. This argument presupposes that a second decision binding a defendant over for trial is the "correct" decision; there is no legal basis for such an assumption. Where a second ruling contradicts an earlier ruling based on the same evidence, there is no way, short of appeal, of knowing which ruling is correct and which erroneous. Contrary to the plaintiff's assumption, the initial dismissal may have been correct and the subsequent bindover erroneous. If dismissal of a first complaint does not preclude the filing of a second, then it is difficult to see how dismissal of the second would preclude the filing of a third, and so on, until the repeated prosecutions reached the point of harassment. *See: State ex rel. Beck v. Duffy, supra,* 166.

The plaintiffs also argue that if a second complaint must be supported by additional evidence, there will be difficulty in determining what constitutes "additional" evidence. While the concept is not self-defining, there is no reason to believe that trial courts will be unable to give it substance. Indeed, the necessary determination is closely akin to that made under sec. 904.03, Stats., which permits a trial court to limit the needless presentation of cumulative evidence. *See: State v. Lenarchick,* 74 Wis.2d 425, 448, 247 N.W.2d 80 (1976).

The availability of appeal provides ample opportunity for correction of errors at the preliminary examination.

To also sanction further prosecution on the same evidence would contradict the holding that an order of dismissal is a final order, would foster inconsistent rulings, and would undermine the rights of the accused by giving the prosecution the simultaneous right of appeal.

The order of the circuit court making absolute the writ of habeas corpus and discharging the defendant is affirmed.

## WAIVER.

The defendant argues that by filing a second complaint, the state has waived its right to appeal the order dismissing the first complaint.

There seems to be agreement on the general rule that:

"If a party, after judgment against him, and before perfecting an appeal or writ of error therefrom prosecutes another action or proceeding based on the same cause, and such action is inconsistent with an appeal or writ of error, he estops himself to appeal from the first judgment or from bringing error to review it, . . ." 4 C. J. S., *Appeal and Error*, sec. 222, p. 662; *see also:* 4 Am. Jur.2d, *Appeal and Error*, sec. 264, p. 759.

Along a similar line, this court has repeatedly held that a party who proceeds to trial waives the right to appeal an order granting the trial, or to appeal an order denying his earlier motion for summary judgment. *Richie v. Badger Mut. Casualty Co.*, 22 Wis.2d 133, 125 N.W.2d 381 (1963) ; *Peterson v. Kemling*, 251 Wis. 555, 30 N.W.2d 75 (1947) ; *Bonnell v. Chicago, St. P., M. & O. R. Co.*, 158 Wis. 153, 147 N.W. 1046 (1914) ; *Maxwell v. Kennedy*, 50 Wis. 645, 7 N.W. 657 (1880). From these cases it is apparent that a waiver arises when the party takes affirmative action inconsistent with reliance upon the remedy of appeal, or when the party voluntarily participates in proceedings inconsistent with appeal, tak-

ing its chances on the outcome of those proceedings. This reflects the general rule that once a party has elected its remedy, it is bound thereby. *Jolin v. Oster,* 55 Wis.2d 199, 205, 198 N.W.2d 639 (1972).

The Supreme Court of Iowa has held that:

". . . [A] party cannot prosecute an appeal and at the same time prosecute an action in the trial court on the same cause of action. By instituting and prosecuting the action in the lower court he waives his right to prosecute the appeal. . . ." *Schnurr v. Brazelton,* 217 Iowa 1125, 1129, 253 N.W. 152, 153 (1934).

To the same effect, the Supreme Court of Arizona has approved the following rule:

" ' . . . *upon the dismissal of an action at law, if the plaintiff institutes a second action upon the same cause, he thereby waives any error committed by the court in such dismissal.*' " (Emphasis in original.) *Hinton v. Hotchkiss,* 65 Ariz. 110, 113, 174 Pac.2d 749, 752 (1946), *quoting* 2 Am. Jur., *Appeal and Error,* sec. 223. *See generally:* Annot., 115 A. L. R. 121 (1938), and later case service.

The foregoing statements represent an accurate statement of the general rule. Together with the decisions of this court discussed above, they compel the conclusion that the commencement of a second prosecution does give rise to a waiver, *if* such a prosecution can be brought.

There is an exception to the general rule, however. That exception becomes applicable because of our holding that the complaint in this case may not be reissued. Under the exception:

". . . The right to appeal is not waived by a mistaken attempt to pursue the wrong remedy, which results in no benefit to appellant or injury to the party claiming waiver; . . ." 4 C. J. S., *Appeal and Error,* sec. 222, p. 659.

This court has held that a plaintiff who mistakes his remedy in the first instance is not precluded from thereafter pursuing the proper remedy. *Braun v. Jewett*, 1 Wis.2d 531, 541, 85 N.W.2d 364 (1957). Where only one remedy exists, but through mistake an inappropriate one is invoked, the proper remedy is not waived. *Rowell v. Smith*, 123 Wis. 510, 522, 102 N. W. 1 (1905). *Bechtel v. Columbia Casualty Co.*, 198 Wis. 114, 223 N.W. 568 (1929).

There are several reasons for this exception. First is the principle that a waiver can arise only from a voluntary and intentional election. This element is absent when, in good faith, a party pursues a nonexistent remedy. The Supreme Court of Nebraska explained in *Haschenberger v. Dennis*, 118 Neb. 411, 414, 225 N.W. 25, 26 (1929):

"There must be a clearly expressed intention of the appellant to abandon his appeal. The waiver of the right must be intentional. It cannot be waived by one who, as a result of a mistake or ignorance, attempts to pursue the wrong remedy. He may, when he finds that he has made the wrong selection, without prejudice dismiss his proceeding and pursue another remedy, which he has not abandoned intentionally nor waived. . . ."

For similar reasons, the rule requiring election of remedies is relaxed where there is considerable doubt or question as to the appropriate remedy to be pursued. *Astin v. Chicago, M. & St. P. R. Co.*, 143 Wis. 477, 128 N.W. 265 (1910). 4 C. J. S., *Appeal and Error*, sec. 33, p. 131. In such cases there is the added concern that it would be unfair to require an election when the party could not reasonably know whether a particular remedy is legally available.

The exception is also based on the belief that there can be no "election" of a nonexistent remedy. The Restatement of Judgments, sec. 65, Comment *a*, p. 272, explains that:

". . . [W]here the plaintiff seeks a remedy which is not available to him and judgment is for this reason given against him, the judgment is not on the merits, and the plaintiff is not precluded by the judgment from pursuing an available remedy . . . In this case the plaintiff does not have two alternative remedies, and his failure to obtain a remedy which he does not have does not preclude him from obtaining an available remedy."

*See also:* sec. 65, Comment *g*, p. 276. Similarly, Dobbs, *Handbook on the Law of Remedies* (hornbook series, 1973), at 20, states that:

". . . [W]here the plaintiff selected the wrong remedy in the first place and is denied that remedy in the first suit, it can be argued that he had only one remedy available to him and that 'election' of a remedy that is not in law available to him at all, is not an election of inconsistent remedies. . . ."

The rationale of these authorities is applicable to the facts of the case before us. The decision of the state to recharge does not represent a clear or intentional abandonment of the right to appeal, if that right was, in fact, the only remedy available. Since by the filing of the second complaint, the state was pursuing a non-available remedy, it is not thereby precluded from pursuing the available remedy. Therefore, since we have determined the state may not reissue the complaint in this case, its abortive effort to do so does not constitute a waiver of its right to appeal.

### PROBABLE CAUSE.

The defendant does not seriously contest the fact that the evidence adduced at the preliminary examination

was sufficient, as a matter of law, to establish probable cause to believe that the defendant had committed a felony. On review, he relies on the contention that under the facts of this case the state could not reissue a criminal complaint and that having done so, it waived its right to appeal.

We have held that the state could not reissue a criminal complaint in this case and that it did not waive its right to appeal from the order dismissing the first complaint. Therefore, we must determine whether the county judge committed error in dismissing the complaint for lack of probable cause at the conclusion of the preliminary examination.

Evidence adduced at the preliminary examination shows that shortly before midnight on November 27, 1976, Racine police officers Joseph Mooney and Mike Johnson responded to a "family trouble" call. The officers were met by a woman who informed them that her husband, the defendant, had been drinking, and that they had quarreled. The defendant was inside their second-floor apartment with their six-week old baby, and defendant's wife was concerned that he would neglect the baby.

The officers, who were in uniform, went up to the apartment, knocked, and identified themselves as patrolmen. The defendant opened the door five or six inches, but left it fastened to the doorjamb by a security chain. There was a conversation in which the officers asked the defendant to give them the baby or to admit his wife to the apartment, in answer to which the defendant responded that they couldn't break into his home. The officers told him they were not planning to break into his home.

The defendant then lunged through the partially open door with a sword, cutting Officer Mooney's leather jacket. Officer Mooney was unable to grab the sword or to push the door in.

The officers called for assistance, and Sergeant Arthur Miller arrived. The three officers conferred with the defendant's wife, who said she did not want the baby left with her husband. The officers then went back up to the apartment door, where they asked the defendant several times to come out, to let them in, or to let his wife take the baby. The defendant stated repeatedly that if they came in, "he would run [them] through," or "do [them] in."

He then again thrust the sword through the doorway, coming within inches of Sergeant Miller's stomach. Officer Mooney tried unsuccessfully to kick the door in; the defendant lunged once more; and Officer Mooney tried again to kick the door in or break the chain.

The defendant then unchained the door, flung it open and stepped out onto the stairway landing. Grasping the sword handle in both hands, he began swinging the sword overhead, striking Sergeant Miller four times before the ofifcers could subdue him. Sergeant Miller parried one blow with his nightstick. Another left him with minor lacerations of the hand and a bruise and welt on his forearm. The third blow struck the back of his head but did not penetrate his helmet, and the fourth bruised his right shoulder.

Based upon our review of the record, we have no difficulty in concluding that the evidence adduced at the preliminary examination, which was undisputed, was sufficient to support a finding of probable cause that a felony had been committed. We conclude that as a matter of law, the county judge erred in dismissing the complaint.

In addition to the crime charged in the complaint, we would observe that sec. 941.30, Stats., provides:

"*941.30 Endangering safety by conduct regardless of life.* Whoever endangers another's safety by conduct

imminently dangerous to another and evincing a depraved mind, regardless of human life, may be fined not more than $1,000 or imprisoned not more than 5 years or both."

We also observe that sec. 940.205, Stats., provides:

*"940.205 Battery to peace officers; firemen.* Whoever causes bodily harm to a peace officer, as defined in s. 939.22(22), or fireman, acting in his official capacity and the person knows or has reason to know that the victim is a peace officer or fireman, by an act done with intent to cause bodily harm to the peace officer or fireman, without consent of the person so injured, may be imprisoned not more than 2 years."

In referring to the foregoing statutes, we would emphasize that we in no way suggest that the defendant is guilty of either of the offenses. Nor do we suggest that the defendant should be charged with either or both of the offenses. The ultimate charge set forth in the information rests with the state and should relate to the evidence adduced at the preliminary examination. We do observe, however, that from our view of the record sufficient evidence was adduced at the preliminary examination for the county judge to find probable cause that a felony had been committed.

Sec. 970.03(7), Stats., requires the presiding judge at a preliminary examination to bind the defendant over for trial, "[i]f the court finds probable cause to believe that a felony" was committed by the defendant. This court has said that the purpose of a preliminary examination under sec. 970.03(1) is to determine if there is probable cause to believe *a* felony has been committed by the defendant. *State ex rel. Hanna v. Blessinger,* 52 Wis.2d 448, 450, 190 N.W.2d 199 (1971).

The language of sec. 361.18, Stats., 1947, was substantially the same as sec. 970.03(1), except that the current statute provides for a bindover for a felony,

whereas the 1947 statute referred to "an offense." Applying the 1949 statute in *State ex rel. Kowaleski v. Kubiak,* 256 Wis. 518, 41 N.W.2d 605 (1950), this court upheld a bindover where the trial judge had doubt whether there was probable cause to believe that any of three charged offenses was committed, but found probable cause to believe that an offense not charged in the complaint (obtaining money under false pretenses) had been committed. The court also held that sec. 361.18, Stats. 1947, did not require a finding as to any specific offense.

The preliminary examination is not a trial on the merits. It is an inquiry into the facts to determine if a felony has been committed and whether there is probable cause for charging the defendant with a felony so that he may be kept in custody or admitted to bail to stand trial on an information. *Johns v. State,* 14 Wis.2d 119, 109 N.W.2d 490 (1961).

Once it has been determined that there is probable cause to believe a felony has been committed by the defendant and he is bound over for trial, the prosecutor is not bound, in preparing an information, to the charges advanced at the preliminary examination. Rather the prosecutor may charge in the information any crime not wholly unrelated to the transactions and facts adduced at the preliminary examination. *Bailey v. State,* 65 Wis.2d 331, 222 N.W.2d 871 (1974). The purpose of the preliminary examination has been satisfied once a finding of probable cause has been made, and the prosecutor may allege additional related charges in the information. *Bailey v. State, supra,* 341.

The county judge did not need to find probable cause as to *the* felony charged in the complaint. We, therefore, reach the conclusion that it was error for the county judge to dismiss the complaint. We hold that the evidence adduced at the preliminary examination established prob-

able cause to believe a felony has been committed by the defendant and that he should be bound over for trial. The order is reversed; the cause remanded for further proceedings consistent with this opinion and the remand of the defendant to custody.

*By the Court.*—Order of the circuit court affirmed. Order of the county court reversed and cause remanded for further proceedings consistent with this opinion.